# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 93-CA-01337-SCT

*JEANETTE WILKS, DAUGHTER OF ANDERSON SMITH, DECEASED, INDIVIDUALLY, AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES AND THE ESTATE OF ANDERSON SMITH, DECEASED AND JESSIE WILLIE BELL*

*v.*

*THE AMERICAN TOBACCO COMPANY AND NEW DEAL TOBACCO AND CANDY, INC.*

| | |
|---|---|
| DATE OF JUDGMENT: | 06/23/93 |
| TRIAL JUDGE: | HON. EUGENE M. BOGEN |
| COURT FROM WHICH APPEALED: | WASHINGTON COUNTY CIRCUIT COURT |
| ATTORNEYS FOR APPELLANTS: | RICHARD F. SCRUGGS |
| | CYNTHIA LANGSTON MILLER |
| | DON BARRETT |
| | FREDERICK B. CLARK |
| | CHARLES VICTOR MCTEER |
| ATTORNEYS FOR APPELLEES: | JAMES E. UPSHAW |
| | THOMAS E. BEZANSON |
| | LONNIE D. BAILEY |
| | J. MURRAY AKERS |
| | MARY T. YELENICK |
| NATURE OF THE CASE: | CIVIL - WRONGFUL DEATH |
| DISPOSITION: | AFFIRMED - 9/12/96 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | 10/3/96 |

**BEFORE SULLIVAN, P.J., McRAE AND MILLS, JJ.**

**McRAE, JUSTICE, FOR THE COURT:**

¶1. This is an appeal from a judgment in favor of the American Tobacco Company in the Circuit Court of Washington County on a claim for wrongful death after the jury determined that cigarette smoking was not the proximate cause of the decedent's death. The heirs of Anderson Smith maintained on appeal that they were at least entitled to Smith's lifetime damages which were

overwhelmingly proven to be caused by smoking defendant's Pall Mall brand of cigarettes. Because the heirs brought this cause of action solely under Miss. Code Ann. § 11-7-13, Mississippi's wrongful death statute, we must affirm the jury verdict and judgment below finding no damages where the jury concluded defendant's product was not the proximate cause of death. We also affirm the court's grant of partial summary judgment striking assumption of the risk as a viable defense.

## I.

¶2. On May 5, 1988, the heirs of Anderson Smith filed a complaint, pursuant to Miss. Code Ann. § 11-7-13, asserting that Pall Mall cigarettes, manufactured and distributed by the American Tobacco Company [hereinafter "ATC"], New Deal Tobacco and Candy Company, Inc., were unreasonably dangerous, resulting in the wrongful death of Smith, who smoked Pall Malls for approximately forty-five years. The Circuit Court of Washington County granted partial summary judgment, declaring cigarettes unreasonably dangerous as a matter of law and striking assumption of the risk as an affirmative defense.[1] However, on June 17, 1993, following a two week trial, the jury found that Smith's death was not proximately caused by his lung cancer or chronic obstructive pulmonary disease, conditions which had been attributed to cigarette smoking. Judgment was therefore entered for ATC. Plaintiffs filed their notice of appeal on November 17, 1993, and the defense cross-appealed the court's grant of partial summary judgment.

## II.

¶3. Anderson Smith smoked about one and one half packs of Pall Mall cigarettes per day for approximately forty-five years. Pall Mall cigarettes had been discovered in tests to contain more tar or harmful compounds than most cigarettes manufactured in the United States. Dr. David M. Burns, M.D., testified that Smith died on February 7, 1986 of squamous cell carcinoma on the upper right lobe of the lung, and chronic obstructive lung disease caused by smoking Pall Mall cigarettes.

¶4. Burns admitted that the death certificate failed to list lung cancer as the cause of death, but he maintained that medical records revealed no hope for Smith's recovery from lung cancer. The death certificate stated the immediate cause of death as a "rupture of the myocardium as a consequence of a myocardial infarction"; his heart ruptured and filled the myocardium with blood causing the heart to eventually quit beating. This was caused by a pulmonary embolism, or blood clot, which traveled through the veins to the vena cava and into the pulmonary artery where it lodged. Without an autopsy, however, there was no evidence completely resolving all doubt as to cause of death.

¶5. Smith's lung cancer was actually discovered in a routine chest x-ray after he was admitted to the hospital with urinary tract complaints. Smith was scheduled for a cystoscopic examination due to complaints of burning during urination, but local anesthesia was not sufficient to numb the pain during the first attempt as Smith thrashed about on the operating table, and forcefully removed the cystoscope from his urethra. As a result, Smith was placed under general anesthesia for a second cystoscopic examination on February 4, 1986. During this surgery, there was a large amount of trauma to his urinary tract which caused bleeding, a drop in blood pressure and cardiac arrhythmia. Due to these complications, the doctors ended the second cystoscopy prematurely and performed three transfusions upon Smith's recovery from the anaesthesia.

¶6. The problems which led to the cystoscopy were related to improperly treated gonorrhea suffered

by Smith in 1938 and 1944. Because penicillin was not widely available until the late 1940's, sulphur drugs and strong caustic acid were often used in an attempt to kill the gonorrhea, but this often led to scarring of the urinary tract. The scarring destroyed the stretching ability of the bladder and caused dilation and obstructions which led to infection of the bladder, prostate and kidneys. The numerous procedures Smith underwent during his life to alleviate these problems caused additional scarring of the urinary tract.

¶7. Defense experts maintained that the pulmonary embolism which killed Smith was the result of his urinary tract problems, the urinary tract surgery and complications during the this surgery three days before his death. It was also suggested that the blood clot could have formed and broken free when Smith fell in his bathtub and fractured the shaft of his right femur. It was recognized, however, that Smith was suffering lung problems too, and that the length of his stay at the hospital and prolonged bed rest, was due to the discovery of cancer. Bed rest and surgery were major risk factors for pulmonary embolism. Smith's medical records indicated his cancer had reduced his lung capacity to 30 percent of its normal capacity. His cancer was inoperable, and he had been scheduled for curative radiation treatment. He was in a great deal of pain and suffering over his last several years due to lung problems. His medical bill for his final stay in the VA hospital, forty-six days at $418 per day, totaled $19,378.

¶8. Based on early scientific studies, Dr. Burns testified that ATC should have known of the ill effects of cigarette smoking by the early 1950s. ATC made no attempts to warn consumers, and it even formed the Tobacco Research Council, according to Burns, to conduct its own research and make the issue appear unresolved. In 1964, the Surgeon General finally released a report based on statistical correlations, as opposed to laboratory tests, concluding that cigarette smoking caused lung cancer. Burns testified that statistics demonstrate today that cigarette smoking is the single most hazardous product currently available in the United States, killing approximately 435,000 people per year. Still, Robert K. Heimann, former President and Chief Executive Officer of ATC, maintained the company's historical position that the Surgeon General was dead wrong in concluding that cigarettes were harmful to health, and that warning labels were not justified.

¶9. Dr. Richard Pollay, a Ph.D in consumer behavior, testified that Pall Mall's 1950's advertising campaign, "Guard against throat scratch," which increased sales by three hundred percent, was a deliberate attempt to assure people that Pall Mall cigarettes actually protected against the possibility of cancer. Pollay also researched the minutes from the Tobacco Industry Research Committee which, in his opinion, revealed that its sole purpose was to create a campaign to communicate to the public there was insufficient evidence to conclude that cigarette smoking was dangerous to one's health. III.

¶10. This trial boiled down to a dispute over the decedent's cause of death. Plaintiffs claimed that Smith died from smoking related illnesses. The American Tobacco Company maintained that Smith died as the result of a pulmonary embolism caused by a lifetime of complications suffered during treatment for gonorrhea. On June 17, 1993, the twelve member jury returned a verdict finding that the death of Anderson Smith was not proximately caused or contributed to by his lung cancer or chronic obstructive pulmonary disease. Based on this verdict, the trial court entered judgment for ATC on June 23, 1993. On appeal, the plaintiffs contend that even though the jury may have found Smith's death unrelated to smoking, the heirs were entitled to recover damages associated with Smith's lung cancer and other smoking related illnesses suffered during his lifetime.

¶11. The Plaintiffs pursued their cause of action exclusively under Mississippi's wrongful death statute which provides as follows:

> **Whenever the death of any person shall be caused by any real, wrongful or negligent act or omission**, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, or **whenever the death of any person shall be caused by the breach of any warranty, express or implied,** of the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption, as would, had the death not ensued, have entitled the person injured or made ill or damaged thereby, to maintain an action and recover damages in respect thereof . . .

Miss. Code Ann. § 11-7-13 (1972)(emphasis added).

¶12. Based on the language of our wrongful death statute, in order to recover any damages for wrongful death, the heirs were required to prove that the negligence or wrongful acts of ATC caused the death of Smith. The jury returned a verdict and special interrogatory clearly indicating they found Smith's death to have been unrelated to his lung cancer or chronic obstructive pulmonary disease. Consequently, the jury verdict prohibits any recovery of wrongful death damages under the statute. Had the jury found the cause of death attributable to the pulmonary disease or lung cancer, then the plaintiffs would naturally have been entitled to redress for damages associated with these smoking related illnesses suffered during his lifetime.

¶13. Given the overwhelming proof that Smith's lung cancer was the result of smoking cigarettes manufactured by ATC, the heirs maintain on appeal that they are at least entitled to recover damages for injuries suffered by Smith during his lifetime which were related to smoking ATC's cigarettes such as medical bills and the pain and suffering associated with his lung cancer. Although the wrongful death statute provides for recovery of "all the damages of every kind," which would certainly include lifetime damages, the entire claim under this statute must fail where the heirs failed to prove by a preponderance of the evidence that Smith's death was caused by ATC's product.

¶14. The heirs suggest that the following portion of the wrongful death statute suggests they are entitled to recover lifetime damages:

> In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, **whether an estate has been opened or not**.

§ 11-7-13 (1972)(emphasis added).

¶15. This language allows the heirs to bring a wrongful death suit without regard to administration of the estate. However, this excerpt is irrelevant to the issue of the elements which must be proven in order to recover for wrongful death. Certainly the closing of the estate did not preclude the heirs from this action; however, it does not alter the fact that the heirs' cause of action was based on Smith's "wrongful death."

¶16. In *Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470, 471 (1935), this Court stated, "[i]t is essential as an element of liability under our wrongful death statute . . . that the negligence complained of shall be the proximate cause, or at least a directly contributing cause, of the death which is the subject of the suit." In the wrongful death action brought in *Berryhill*, this Court did not allow the plaintiffs to recover for the decedent's pain and suffering because they were not successful in proving that the defendant's negligence was the proximate cause of death. 158 So. at 471. Recovery for those damages had to be brought in a suit by the personal representative. *Id*.; *see Munn v. Southern Health Plan, Inc.*, 719 F. Supp. 525, 530 (N.D. Miss. 1989) (concluding cause of action for damages must be brought under survival statute where defendant found not liable for decedent's death), *aff'd*, 924 F.2d 568 (5th Cir.), *cert. denied*, 112 S. Ct. 277 (1991).

¶17. Mississippi's survival statute, Miss. Code Ann. § 91-7-233 (1972), allows personal actions of a decedent to be pursued after his death. It provides as follows:

> Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted. . . .

§ 91-7-233. The survival statute permitted a cause of action for personal injury suffered by Smith during his lifetime. Again, the jury found in this case that the decedent's death was not related to the cause of action as presented by the plaintiff. As contended by ATC, the heirs failed to alternatively base their cause of action on the survival statute at any point in time during this litigation. The complaint and trial proceeded exclusively under the wrongful death statute. ATC cannot be blamed for the heirs' failure to alternatively pursue a cause of action for personal injury under Mississippi's survival statute.

¶18. As to ATC's cross-appeal, we find that the trial court properly struck the defense of assumption of the risk based on our recent pronouncements in *Horton v. American Tobacco Co.*, 667 So. 2d 1289 (Miss. 1995). Even if it was a viable defense, it may not be employed unless the defendant admits the existence of a risk. ATC firmly denied that smoking was hazardous to one's health. It follows that there was no evidentiary support for ATC's use of this defense. All other arguments of ATC's cross-appeal are rendered moot by the jury verdict and judgment in the court below.

¶**19.** Therefore, in light of the verdict at trial and the heirs' failure pursue their cause of action under the survival statute, the heirs were not entitled to recover Smith's lifetime damages. The judgment below for the American Tobacco Company is hereby affirmed. ATC's cross-appeal is denied.

¶**20. ON DIRECT APPEAL: AFFIRMED. ON CROSS APPEAL: DENIED.**

**SULLIVAN, P.J., PITTMAN, ROBERTS AND SMITH, JJ., CONCUR. MILLS, J., CONCURS IN RESULT ONLY. BANKS, J., CONCURS WITH SEPARATE WRITTEN OPINION JOINED BY LEE, C.J., AND PRATHER, P.J.**

**BANKS, JUSTICE, CONCURRING:**

**¶21.** I concur in the result reached by the majority and its reasoning with respect to the direct appeal. I also concur in the result reached by the majority with respect to the cross-appeal and agree that a majority of the Court voting in *Horton v. American Tobacco Co.*, that assumption of the risk is subsumed in comparative fault doctrine. I write separately to note that I do not join the pronouncements immediately following the majority's reference to *Horton.*

**LEE, C.J., AND PRATHER, P.J., JOIN THIS OPINION.**

1. The court also denied the request to strike the defense of comparative fault, declaring that it might still be a viable defense. Defendants unsuccessfully sought to have this ruling set aside by interlocutory appeal.