# IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2002-CA-00140-SCT

*NANCY NECAISE, INDIVIDUALLY AND ON BEHALF*
*OF THE WRONGFUL DEATH BENEFICIARIES OF*
*CHARLES FREEMAN, DECEASED*
*v.*
*MATTHEW SACKS, M.D. AND THE MEDICAL*
*ONCOLOGY GROUP, P.A.*

| | |
|---|---|
| DATE OF JUDGMENT: | 01/02/2002 |
| TRIAL JUDGE: | HON. ROBERT H. WALKER |
| COURT FROM WHICH APPEALED: | HANCOCK COUNTY CIRCUIT COURT |
| ATTORNEY FOR APPELLANT: | ROBERT W. SMITH |
| ATTORNEYS FOR APPELLEES: | JOE R. COLINGO |
| | KEVIN C. BRADLEY |
| | JOE SAM OWEN |
| NATURE OF THE CASE: | CIVIL - MEDICAL MALPRACTICE |
| DISPOSITION: | REVERSED AND REMANDED - 03/27/2003 |
| MOTION FOR REHEARING FILED: | |
| MANDATE ISSUED: | |

**BEFORE PITTMAN, C.J., WALLER AND CARLSON, JJ.**

**CARLSON, JUSTICE, FOR THE COURT:**

¶1.    Aggrieved by the Hancock County Circuit Court's dismissal of her medical malpractice suit against Matthew Sacks, M.D. (Dr. Sacks), and the Medical Oncology Group, P.A., (MOG), Nancy Necaise (Necaise) appeals to this Court. Finding reversible error, we reverse and remand this case to the trial court.

## FACTS AND PROCEEDINGS IN THE TRIAL COURT

¶2.     Nancy Necaise's father, Charles Freeman (Freeman), was diagnosed with cancer in early 1998, and soon thereafter, he started chemotherapy treatment at MOG.   For Freeman's intravenous chemotherapy treatment, the medical personnel used Taxol, a highly toxic drug used in battling systemic cancer.  While Freeman's first treatment on January 22, 1998, was relatively uneventful, during his second treatment on February 12, 1998, Freeman began to experience pain, swelling, and discoloration in the arm into which the chemical was being infused.   Over the next several days, the skin on Freeman's arm began to peel off and his arm became swollen to two or three times its normal size.  As a result of what was characterized as a third degree chemical burn, Freeman had to undergo extensive treatment causing him to incur medical bills in excess of $170,000.  Freeman was of the opinion that his injuries were a result of negligent chemotherapy treatment resulting in a chemical infiltration into the tissue of his arm, while Dr. Sacks and MOG opined that Freeman's injuries most likely resulted from an adverse drug reaction.

¶3.     On August 19, 1998, Freeman commenced his medical malpractice suit against Dr. Sacks and an unidentified nurse, Jane Doe I, in the Circuit Court of Hancock County.  Over the next few months, responsive pleadings were filed, discovery was commenced, and Freeman's attorney requested a trial setting.

¶4.     Regrettably, Charles Freeman died from his cancer on January 9, 1999; however, as will be more fully hereinafter discussed, there was evidently no causal connection between any alleged medical negligence and Freeman's death.  On February 22, 1999, Necaise, through the same attorney who had commenced the lawsuit for Freeman, filed in the same action a Motion to Substitute Party Plaintiff, alleging that Freeman had initially filed the lawsuit; that Freeman died of cancer on January 9, 1999; that Miss. R. Civ. P. 25 allowed for a party to be substituted for a party who died subsequent to commencement of a civil action; and, that Necaise was the natural daughter of Freeman and "a representative and wrongful

death beneficiary of [Freeman]." Judge John Whitfield by an agreed order signed on March 3, 1999, and duly entered on March 8, 1999, authorized Necaise to be substituted as a party pursuant to Miss. R. Civ. P. 25, and this order further provided, inter alia, that Necaise, "individually and on behalf of the wrongful death beneficiaries of [Freeman] is hereby substituted as the party plaintiff in this [action]." On June 16, 1999, a notice of trial setting was administratively entered by the court administrator; this notice set a trial date of November 1, 1999, before Judge Robert H. Walker. On July 20, 1999, Judge Walker entered a scheduling order which set out various deadlines and confirmed the November 1st trial date.

¶5. On September 7, 1999, in cause number 99-0689 on the docket of the Chancery Court of Hancock County, the chancellor entered a Judgment Granting Probate of Will and Letters Testamentary. This chancery court judgment found as a fact that Freeman had died with a will; that Freeman's estate consisted only of a cause of action for "personal injuries and/or wrongful death;" that Freeman was survived only by Necaise; and, that prior to his death Freeman had entered into an employment contract with a law firm concerning his personal injury claim. This chancery court judgment likewise adjudicated, inter alia, that Freeman's will be admitted to probate; that Necaise be appointed as executrix of Freeman's estate; that the employment contract with the law firm be approved; and, that the law firm take all necessary action to preserve Freeman's claim in behalf of the executrix and the estate, including the initiation of legal proceedings "against all necessary parties for the preservation of [the claim]."

¶6. Subsequent to the circuit court order substituting Necaise as a party, and the chancery court judgment appointing Necaise as the executrix of Freeman's estate, and upon entry of a circuit court order authorizing the filing of an amended complaint, Necaise filed her First Amended Complaint on September 30, 1999. Notwithstanding Freeman's intervening death since the commencement of the lawsuit, the amended complaint did not contain a wrongful death claim and in fact was remarkably similar to the original

3

complaint. A paragraph-by-paragraph comparison of the original complaint and the first amended complaint reveals the following information: The introductory paragraph in both complaints states, "COMES NOW THE PLAINTIFF, Charles Freeman, and files his complaint.....", again, notwithstanding the fact that Freeman had died by the time of the filing of the first amended complaint; paragraph number one (1) of both complaints states, "Plaintiff is an adult resident citizen of Harrison County, First Judicial District;"[1] paragraph number two-A (2A) pertaining to Dr. Sacks is the same in both complaints; paragraph number two-B (2B) of the original complaint named Jane Doe as a defendant while paragraph number two-B (2B) of the amended complaint named MOG as a defendant; paragraph number three (3), setting out the alleged negligent actions of the defendants, is the same in both complaints; paragraph number four (4), setting out the causal connection between the alleged negligence and the damages, is the same in both complaints; paragraph number five-A (5A) of the original complaint set outs the alleged negligent acts of Nurse Doe, while paragraph number five-A (5A) of the amended complaint specifically names the nurse and alleges that she is an employee of MOG, but the alleged acts of negligence are the same in both complaints; paragraph number five-B (5B) of the original complaint sets out the alleged negligent acts of Dr. Sacks, while paragraph number five-B (5B) of the amended complaint charges both Dr. Sacks and MOG with negligence, but the alleged acts of negligence are the same in both complaints; paragraph number six (6) in both complaints allege that the nurse was acting under the direction and control of Dr. Sacks, and that Dr. Sacks was responsible for his nurse's actions under the respondeat superior doctrine, with the only difference in the two paragraphs being that in the amended complaint, the nurse is specifically named and is specifically alleged to be Dr. Sacks's employee; paragraph number seven (7), setting out

---

[1]The chancery court judgment entered earlier that same month found as a fact that Necaise was residing in Kiln, Mississippi, which is in Hancock County. Again, Freeman was the named plaintiff in the original complaint, while Necaise was the plaintiff in the first amended complaint.

Freeman's injuries, is the same in both complaints; and, the ad damnum clauses in both complaints specifically request the same amount of damages. However, of particular note is one major difference between the two complaints. The original complaint was styled "Charles Freeman v. Matthews Sacks, M.D. and Jane Doe, I." On the other hand, the first amended complaint was styled "Nancy Necaise, Individually and on Behalf of the Wrongful Death Beneficiaries of Charles Freeman, Deceased v. Matthew Sacks, M.D. and Medical Oncology Group, P.A." On motion of the defendants, this case was continued from its scheduled trial date of November 1, 1999, and the trial was rescheduled for August 7, 2000.

¶7.     Evidently, by May 24, 2000, after additional discovery and motion hearings, the defendants had become admittedly confused as to the nature of the litigation they were being called upon to defend. Was it a personal injury suit revived in Freeman's behalf or was it a personal injury and wrongful death suit, and who were the parties? On that date, the defendants filed their Motion to Strike Wrongful Death Claim or in the Alternative, Motion to Continue.[2] In this motion, the defendants referred to a pre-trial hearing before Judge Walker on August 20, 1999. The defendants set out in their motion a portion of the transcript from this hearing, and a review of not only the motion, but also the record before this Court, reveals that the following colloquy occurred between Judge Walker and counsel (actually we quote from the transcript a little more than what the defendants quote in their motion):

> [DEFENSE COUNSEL]: He's [Freeman's] dead now. He was being treated for non-small cell lung cancer. He had cancer of the lungs in the past. Actually he had a portion of a lung removed. He developed cancer in his other lung, and was receiving treatment –

---

[2]In his motion to continue this case from the November 1, 1999, trial date, Dr. Sacks, through counsel, alleged as one of the grounds the fact that Necaise's deposition testimony revealed that Necaise was attempting to link her father's death to the injuries allegedly received during the chemotherapy treatment. More specifically, the August 2, 1999, motion for continuance alleged that "the deposition of [Necaise] revealed that [she] intends to link the death of [Freeman] to the injury he allegedly suffered during the treatment in question. Inasmuch as this case has become, at least in [Necaise's] mind, a death case, the Defendant will be in need of a trial date beyond November 1, 1999, to adequately prepare."

THE COURT: Is the plaintiff alleging any causation of the death in this case to this incident, Mr. Smith?

[PLAINTIFF'S COUNSEL]: No, Your Honor.

THE COURT: Okay.

[DEFENSE COUNSEL]: There was some testimony to that by the substituted plaintiff, the daughter of Mr. Freeman. Apparently that is not going to be asserted now, and that was one of the grounds for the motion for continuance.
THE COURT: [Plaintiff's counsel] says that's not part of the damages requested.

We should remember here that this pre-trial hearing occurred on August 20, 1999, more than one month prior to Necaise's filing of her first amended complaint on September 30,1999. Additionally, on May 18, 2000, just a few days before the defendants' filing of their motion to strike wrongful death claim, Necaise submitted her answers to the defendants' third set of interrogatories, which answers included the following:

INTERROGATORY NO. 5: Please state whether the injuries set forth in your Complaint caused or contributed to the death of Charles Freeman. If your answer is yes, please identify what medical or other proof you have that the injuries complained of caused or contributed to Charles Freeman's death.

ANSWER: My father's death was caused by cancer. The IV extravasation injuries contributed to his death in that he was despondent, lost his fighting spirit and was unable to care for himself as well, as is documented in Garden Park and Memorial Hospital at Gulfport records.

Six days after the defendants had filed their motion to strike wrongful death claim or alternatively, to continue the trial of the case, Necaise, on May 30, 2000, filed her response to the defendants' motion and stated the following:

1. There is not and never has been a wrongful death claim asserted herein. Defendant's motion to strike is moot.

6

> 2. Defendant's motion for continuance is their third motion for continuance and will no doubt be followed by more. The motion is likewise moot as there is no wrongful death claim on which to practice discovery.[3]

The record is silent as to any trial court ruling on the defendants' motion to strike the wrongful death claim, but the record does reveal that for various reasons, the case did not go to trial on August 7, 2000, as scheduled, but instead, the trial date was later reset for June 11, 2001, and then ultimately for August 27, 2001.

¶8. On the morning of trial, with over one hundred prospective jurors present for voir dire and jury selection, Sacks and MOG filed a motion to dismiss pursuant to Miss. R. Civ. P. 12(b)(6), 12(b)(7), & 19. In their motion, Sacks and MOG asserted that Necaise lacked standing to bring the suit for Freeman's personal injuries because such a suit could only be maintained by Freeman's estate; and, that even if Freeman's estate were allowed to maintain a suit for Freeman's personal injuries, the suit was barred by the applicable statutes of limitations. *See* Miss. Code Ann. § 15-1-36, as to medical negligence, and Miss. Code Ann. § 15-1-55 (estate savings statute). After hearing arguments in chambers prior to commencement of voir dire, the trial judge decided to dismiss the jurors, continue the trial, take the motion under advisement, and set deadlines for the plaintiff's reply to the defense motion and the defendants' rebuttal in response to the plaintiff's reply.

¶9. On August 31, 2001, Necaise filed her response to the dismissal motion of Dr. Sacks and MOG, alleging inter alia that the defendants' motion was untimely; that she had been substituted as a party plaintiff by court order after Freeman's death; that the first amended complaint was filed only after she had been appointed by chancery court order to be the executrix of Freeman's estate; that the defendants could not

---

[3]Necaise repeated this abandonment of any wrongful death claims in trial briefs submitted on August 23, 2000, and August 20, 2001.

claim surprise by Necaise being involved in the litigation in her capacity as executrix of Freeman's estate because such information was revealed to the defendants in interrogatory responses more than a year prior to the actual trial; that if there were any defect in the pleadings, such was cured by a liberal application of Miss. R. Civ. P. 15 providing for amendments to pleadings and a copy of such motion for leave to amend and proposed second amended complaint were attached as exhibits to the response; and, that a review of the second amended complaint would reveal that it "relates back" to the original pleading pursuant to Miss. R. Civ. P. 15(c), thus saving the case from being time-barred under the statutes of limitations.[4] On September 7, 2001, Dr. Sacks and MOG responded to Necaise's motion for leave to amend as well as to her response to their motion to dismiss.

¶10. By order dated January 2, 2002, and filed on January 3, 2002, the trial judge denied Necaise's motion to file a second amended complaint and granted the dismissal motion of Dr. Sacks and MOG. Among the reasons for dismissal stated by the trial judge in his order were that (1) Necaise had abandoned her wrongful death claim, thus leaving only Freeman's original claim for injuries and damages sustained during his lifetime, a claim which only Freeman's estate, and not Necaise, individually, could pursue, and as such the complaint before the court failed to state a claim upon which relief could be granted [Miss. R.

---

[4]We note that the language in Necaise's proposed second amended complaint, which never was allowed to be filed by the trial court inasmuch as that court in due course granted the defendants' motion to dismiss, was significantly different than the language contained in the first two complaints. Among other things, the proposed second amended complaint named as plaintiff, "Nancy Necaise, Individually and on Behalf of the Wrongful Death Beneficiaries of Charles Freeman, Deceased and as Executrix of the Estate of Charles Freeman." That language is basically repeated in the introductory paragraph. Paragraph One states that Necaise is an adult resident citizen of Hancock County, and that she is the daughter and sole heir of Freeman and the executrix of his estate. The remaining language in the proposed second amended complaint is identical to the language appearing in the first amended complaint, meaning that there was still no wrongful death claim, but instead a personal injury claim based on the alleged injuries and damages received and incurred by Freeman as a result of the alleged negligent administration of the intravenous chemotherapy treatment.

Civ. P. 12(b)(6)]; (2) although Necaise was the duly appointed executrix of Freeman's estate, her failure to maintain the litigation in the name of the estate rendered the proceedings "a nullity"; (3) Necaise's "individual pursuit" of Freeman's personal injury claim would not toll the applicable statutes of limitations concerning any claim which could only properly be brought by the estate; and (4) any effort to then assert a personal injury claim on behalf of the estate would be futile due to the running of the applicable statutes of limitations.

¶11.    Necaise states the issues to be as follows: (1) Whether the trial court's dismissal of this action without allowance of reasonable time after objection to substitute the real party in interest violates Rules 15, 17 and 19 of the Mississippi Rules of Civil Procedure; and, (2)  Whether the defendants' motion to dismiss was untimely and waived any real party in interest objection.  On the other hand Dr. Sacks and MOG state the issues to be as follows: (1) Whether the defendants' motion to dismiss was timely; (2) Whether Nancy Necaise has standing to pursue an action for Charles Freeman's personal injuries; (3) Whether the statute of limitations on any estate claim on behalf of Charles Freeman has expired; and, (4) Whether substitution of the estate of Charles Freeman is appropriate.   In her rebuttal brief, responding to the brief of Dr. Sacks and MOG, Necaise states the remaining issues to be (3) Whether any statute of limitations bars a civil action for medical malpractice filed within four months of the date of the malpractice; and, (4) Whether any statute of limitations bars an action by an individual person who amends the complaint to plead her representative capacity as executrix.

## STANDARD OF REVIEW

¶12.    We apply the de novo standard when reviewing the granting of a Miss. R. Civ. P. 12(b)(6) motion. *Arnona v. Smith*, 749 So.2d 63, 65-66 (Miss. 1999).  As such, we sit in the same position as did the

trial court. Furthermore, statutory interpretation is a question of law, and we also review questions of law de novo. ***Donald v. Amoco Prod. Co.,*** 735 So.2d 161, 165 (Miss. 1999).

**DISCUSSION**

**I.  WHETHER NANCY NECAISE HAS STANDING TO PURSUE AN ACTION FOR CHARLES FREEMAN'S PERSONAL INJURIES.**

¶13.  The central issue in this case is whether Necaise may maintain her deceased father's personal injury claim, either in her individual capacity, or in her capacity as executrix of her father's estate. Necaise claims that she can; Dr. Sacks and MOG claim that she cannot. Necaise chooses to support her position with claims of the applicability of Miss. R. Civ. P. 17(a) as it relates to joinder and substitution of the real party in interest; Miss. R. Civ. P. 19 as it relates to joinder of a party needed for just adjudication; and, Miss. R. Civ. P. 15 as it relates to liberal joinder and the "relation-back" provision, as well as certain case law. Necaise also attacks the lack of timeliness by the defendants in filing what turned out to be the dispositive motion to dismiss on the day of trial. On the other hand, Dr. Sacks and MOG cite certain statutes and case law to support their claims of Necaise's lack of standing to individually pursue her deceased father's personal injury claims; the running of the applicable statute of limitations; and, Necaise's late efforts to finally get it right by way of maintaining her deceased father's personal injury claims in the name of his estate.

¶14.  Miss. Code Ann. § 91-7-233 (Rev. 1994) states, in pertinent part:

> Executors, administrators, and temporary administrators may commence and prosecute any personal action whatever, at law or in equity, which the testator or intestate might have commenced and prosecuted.

¶15.  Miss. Code Ann. § 91-7-237 states, in pertinent part:

10

> When either of the parties to any personal action shall die before final judgment, the executor or administrator of such deceased party may prosecute or defend such action, and the court shall render judgment for or against the executor or administrator.

Additionally, Miss. Code Ann. § 15-1-36 (Supp. 2002) states that medical malpractice claims must be brought within two (2) years from the date of the alleged negligent act or omission, while the estate savings statute, Miss. Code Ann. § 15-1-55 (Rev. 1995), provides that the estate of a person who dies before the expiration of the applicable statute of limitations may sue or be sued after the running of the applicable statute and within one (1) year after the death of the person. Stated succinctly, in citing these four statutes and the cases of *Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470 (1935), and, *Owen v. Abraham*, 233 Miss. 558, 102 So.2d 372 (1958), Dr. Sacks and MOG assert that Freeman's personal injury claims could be maintained after his death only by Necaise as executrix of Freeman's estate, and since she never did so, the claims are now barred under both the general medical malpractice statute of limitations and the estate savings statute.

¶16. In *Berryhill*, the next of kin of a man who had been accidentally shot and later died brought a medical malpractice suit against the attending physician. This Court held that there was insufficient evidence to show that the death was proximately caused by any negligence on the part of the physician, but this Court went on to state:

> And as to any pain and suffering of the deceased endured by him between the injury and death and which may be shown was probably caused by the asserted negligence, that is an item which must be recovered, if at all, under section 1712, Code 1930, at a suit by the personal representative, not by the next of kin or heirs at law.[5]

---

[5] § 1712 of the 1930 Code was the predecessor statute to § 609 of the 1942 Code and Miss. Code Ann. § 91-7-233 (Rev. 1994).

11

158 So. at 471. In *Owen*, Mitchell Owen's wife sued him for divorce. After the hearing, the chancellor took the case under advisement for entry of a final decree in vacation. By the time the chancellor rendered his opinion, Owen had died. While the chancellor noted the fact of Owen's death in his opinion, the chancellor still awarded alimony to Owen's wife to be assessed against "the defendant and/or the defendant's estate." Owen's counsel attempted an appeal to this Court, claiming that at the time of the chancellor's entry of the decree against Owen and his estate, there was already a named executor of his estate as duly appointed by the chancery court, and that Owen's wife had made no effort to properly revive the action against the executor. This Court found that it did not have jurisdiction to hear the appeal because the entry of "the final decree and subsequent proceedings amount[ed] to a nullity." 233 Miss. at 561, 102 So.2d at 373. In reaching this conclusion, this Court quoted extensively from *Griffith's Mississippi Chancery Practice* and stated:

> Inasmuch as the defendant died before the chancellor reached a decision, the cause should have been revived against the duly acting executor.
>
> Griffith's Mississippi Chancery Practice, Section 591 says in part: 'In order that there may be any decree for the complainant it must be shown in proof that he actually has the interest upon which he sues, and the defendant must be shown, at least by the pleadings, to have some germane litigious concern therein. It follows from this rule, even if there were no other, that litigation is not to be carried on by or against any deceased person. The impossibility of such a thing is apparent however upon its mere mention. There must be revivors in such suits or else further proceedings therein amount to nothing. Thus, if a defendant die during pendency of a suit and there is no revivor or amendment, but only an unwarranted effort to carry on the suit by substituting a new party to the suit, – not one claiming by or under the former defendant, – the proceeding is entirely erroneous.' Section 620 of the same text says in part: 'And likewise a decree rendered against a defendant after his death is void, if he was the sole defendant or was an indispensable party to the suit – although the interlocutory decree were rendered while he was alive.'

233 Miss. at 561, 102 So.2d at 373 (citations omitted).

¶17.   Dr. Sacks and MOG also direct this Court to *Wilks v. American Tobacco Co.*, 680 So.2d 839, 843 (Miss. 1996), wherein this Court held in a wrongful death suit that the decedent's wrongful death heirs were not entitled to recover the decedent's life-time damages because they failed to alternatively pursue such a claim under Miss. Code Ann. § 91-7-233.

¶18.   However, this case turns on a case decided by this Court just last year.  In *Richardson v. Methodist Hospital of Hattiesburg, Inc.*, 807 So.2d 1244 (Miss. 2002), this Court was confronted with the propriety of the circuit judge's grant of summary judgment in favor of the defendants as to the plaintiff's suit for personal injury and wrongful death.  In *Richardson*, Vivian Wheeless was admitted to the hospital with a diagnosis of an intestinal hemorrhage, and she suffered a fatal stroke.  Thereafter, Wheeless's daughter, Linda Richardson, brought a personal injury and wrongful death action against the hospital.  The suit was styled "Linda Richardson, Individually and on Behalf of the Wrongful Death Heirs of Vivian Wheeless, Deceased v. Methodist Hospital of Hattiesburg, Inc., Now Known as Wesley Health Center."  In *Richardson*, we readily acknowledged our holding in *Wilks*, and in so doing, stated:

> Wesley argues that the claim for the pain and suffering as an element of the wrongful death action should likewise be denied pursuant to *Wilks v. American Tobacco Co.,* 680 So.2d 839 (Miss. 1996). In *Wilks*, the jury found that cigarette smoking did not proximately cause the decedent's death. The heirs contended on appeal they were at least entitled to the decedent's lifetime damages that the heirs believed were overwhelmingly proven to be caused by cigarette smoking. The heirs' cause of action was exclusively under Mississippi's wrongful death statute. We held the personal injury action could not be maintained where it was not alternatively claimed under Mississippi's survival statute. *Id.* at 843.

807 So.2d at 1247.  We went on to hold in *Richardson* that the circuit judge appropriately granted summary judgment on Richardson's wrongful death claim because Richardson's designated expert was not qualified to testify as to causation relating to Wheeless's death and any alleged deviations in nursing care; however, we likewise held that the circuit judge inappropriately granted summary judgment on

Richardson's personal injury claim relating to Wheeless's pain and suffering prior to her death. Accordingly, we reversed the trial court judgment in favor of the hospital on Richardson's claim for Wheeless's pain and suffering and remanded that claim to the circuit court for a jury trial. 807 So.2d at 1247-48.

¶19.   The facts of the case sub judice are similar to the facts in **Richardson**. In our case today, Freeman, Necaise's father, allegedly suffered chemical burns during chemotherapy treatment while under Dr. Sacks's care at MOG, and commenced, during his lifetime, a personal injury/medical malpractice suit against Dr. Sacks and one of his nurses. While the actions of Necaise, or at least those of her attorneys, were legitimately a cause of some consternation on the part of Dr. Sacks and MOG and their attorneys when amended pleadings started reflecting the phrase "wrongful death beneficiaries," and while Necaise did equivocate somewhat in deposition and interrogatory responses to the extent that she at least opined that there may have been some connection between the defendants' alleged negligent actions and her father's death, for the most part, Necaise, through her attorney, repeatedly informed the trial court and counsel, orally and in writing, basically that "there is not and never has been a wrongful death claim asserted herein." After Freeman had commenced his  medical malpractice suit, and subsequent to his death in January, 1999, the circuit court, in the same cause of action, signed an agreed order on March 3, 1999, directing that "Nancy Necaise, individually and on behalf of the wrongful death beneficiaries of Charles Freeman is hereby substituted as the party plaintiff in this civil action." In September, 1999, the chancery court found as a fact that Freeman's estate consisted solely of his cause of action for "personal injuries and/or wrongful death," and that Necaise was Freeman's sole survivor; therefore, Freeman's will was admitted to probate and Necaise was appointed as executrix of her deceased father's estate. Subsequent

14

to this chancery court action, in the same month, Necaise then filed her first amended complaint in the same circuit court action initially commenced by her father during his lifetime.

¶20.　Based on our decision in ***Richardson***, admittedly rendered subsequent to the learned trial judge's dismissal of this action, we find that Necaise is able to maintain this suit which was commenced by her father during his lifetime.　Accordingly, we reverse the trial court's grant of the defendants' motion to dismiss pursuant to Miss. R. Civ. P. 12(b)(6).

¶21.　Because our decision as to Issue I is dispositive, we need not discuss the remaining issues.

### CONCLUSION

¶22.　For the reasons herein stated, we find that the learned trial judge erred in granting the defendants' motion to dismiss.　Accordingly, we reverse the trial court's judgment of dismissal and remand this case to the Circuit Court of Hancock County for proceedings consistent with this opinion.

¶23.　**REVERSED AND REMANDED**.

**PITTMAN, C.J., SMITH, P.J., WALLER, COBB, EASLEY AND GRAVES, JJ., CONCUR.　DIAZ, J., CONCURS IN RESULT ONLY.　McRAE, P.J., NOT PARTICIPATING.**