KITCHENS, JUSTICE,
CONCURRING IN PART AND DISSENTING IN PART:
¶ 40. I respectfully disagree with the majority’s holding that, without exception, “nurses cannot testify as to medical causation.” Maj. Op. at ¶ 20. It likely is true that some nurses may not possess the *657 requisite expertise to recognize the cause- and-effect relationship between conditions in a patient’s environment, or particular kinds of harm that a patient may have experienced, and resulting diseases or maladies that occur in consequence of those conditions or events. However, the issue of whether a particular nurse, by virtue of his or her knowledge, skill, experience, training or education, possesses such ability is better determined by a case-by-case inquiry than by a broad, “one-size-fits-all” judicial pontifieation to the effect that no nurse in the world will ever be allowed to testify as to medical causation in any Mississippi court case. As is true of any other profession, the education, experience and understanding of nurses span a broad spectrum. We should not enunciate a hard and fast rule that permanently forecloses the possibility of any nurse’s being qualified to give expert testimony on medical causation in any and all cases that may arise in the future.
¶ 41. In this case, the plaintiffs preexisting conditions, combined with multiple visits to several medical facilities, make it difficult to identify the proximate cause of Ms. Vaughn’s staph infection. Therefore, I agree with the majority that, under the facts of this case, the trial court did not abuse its discretion in determining that Nurse Keller was not in a position to opine that the staph infection was proximately caused by the deficient care of Baptist’s nursing staff.
¶ 42. However, although Nurse Keller could not testify that the staph infection was proximately caused by the treatment the plaintiff received during her first hospitalization at Baptist, she nonetheless is qualified to testify as an expert that, in her opinion, the nursing care given Ms. Vaughn during her first stay at Baptist breached the standard of care of nursing. The majority acknowledges such in stating,
... it is clear that Nurse Keller possessed the requisite knowledge, skill, experience, training, and education to be qualified as an expert in the field of nursing and was qualified to testify concerning the standard of care and any deviations on the part of Baptist nursing staff from that standard of care.
Maj. Op. at ¶ 31. Nevertheless, the majority prevents Nurse Keller’s testifying that the care provided the plaintiff fell below the standard of care of nursing, a ruling that is contrary to this Court’s decision in Richardson v. Methodist Hospital of Hattiesburg, Inc., 807 So.2d 1244, 1245 (Miss.2002).
¶ 43. In Richardson, the daughter of the decedent filed a personal-injury and wrongful-death action against Methodist Hospital of Hattiesburg, alleging that the defendant hospital “caused or contributed to her mother’s pain, suffering, and death by providing sub-standard nursing.” Id. The plaintiff engaged Crystal D. Keller, the same expert under consideration here, who testified “that the deviations from the requisite standard of nursing care led to [the decedent’s] suffering and subsequent death.” Id. On appeal, this Court held that, although Nurse Keller was not qualified to testify to highly complex medical processes, she was indeed qualified to testify as an expert in the field of nursing. Id, at 1247-48. Specifically, the Court stated:
We find the trial court’s ruling was overly restrictive in not allowing Keller to testify concerning the appropriate standard of nursing care and the deviations from that standard. There is sufficient proffered evidence from Keller for a jury to consider ivhether the inadequate nursing care resulted in worsening [the plaintiff’s] pain and suffering.
Id. at 1246 (emphasis added). The Court noted that because “there [was] a genuine *658 issue of fact concerning whether [the decedent] suffered more physically and incurred more expense from the failures of the nursing staff ... the circuit court improperly granted summary judgment as to pain and suffering.” Id. at 1247 (emphasis added). The same can be said here.
¶ 44. Ms. Vaughn has presented ample proof to create a genuine issue of fact as to whether her suffering and financial costs were exacerbated by deficient nursing care at Baptist, including whether leaving Ms. Vaughn to soak in her own urine and feces for lengthy periods of time caused her pain and suffering, and whether Baptist’s failure to monitor, clean, and dress Ms. Vaughn’s surgical wounds contributed to her pain and suffering. Of course, the determination of whether the alleged breach of the nursing standard of care, as opined by Nurse Keller, proximately caused the pain and suffering, depression, mental anguish, emotional distress, and loss of dignity remains solely in the discretion of the jury.
¶ 45. Because Nurse Keller was qualified to opine as an expert that the treatment received by Ms. Vaughn constituted a breach of the applicable standard of care, and because Ms. Vaughn presented genuine issues of material fact as to whether such breach, if any, caused her pain and suffering, depression, mental anguish, emotional distress, and loss of dignity, the trial court erred in striking all of Nurse Keller’s testimony and granting summary judgment for those causes of action. Therefore, I would reverse the trial court’s granting of summary judgment on those claims and would remand for a trial on the merits.
GRAVES, P.J., JOINS THIS OPINION.