807 So.2d 1271 (2001)
JACOB HARTZ SEED COMPANY, INC., Appellant,
v.
SIMRALL AND SIMRALL, A Partnership, Appellee.
Simrall and Simrall, A Partnership, Cross/Appellant,
v.
Jacob Hartz Seed Company, Inc., Cross/Appellee.
No. 2000-CA-00137-COA.
Court of Appeals of Mississippi.
September 25, 2001.
Rehearing Denied November 27, 2001.
Certiorari Denied February 21, 2002.
*1272 Luther T. Munford, Rebecca L. Hawkins, Jackson, Stephen L. Thomas, Greenville, Attorneys for Appellant.
Gerald E. Braddock, Vicksburg, Attorney for Appellee.
BEFORE KING, P.J., LEE, and CHANDLER, JJ.
KING, P.J., for the court:
¶ 1. On March 29, 1998, Simrall and Simrall (Simrall) filed a complaint against Jacob Hartz Seed Company, Inc. (Hartz) alleging breach of express warranty, breach of implied warranty of merchantability, breach of implied warranty of fitness for a particular purpose, negligence and strict liability. Simrall requested damages for a reduction in crop yield for 1997, in the amount of $165,742.30. In a bench trial, held September 20-22, 1999, the Warren County Circuit Court determined that Hartz did not breach the implied warranty of fitness for a particular *1273 purpose or any express warranties, and because Simrall asserted only an economic loss, there was no cause of action for strict liability. The court concluded that the implied warranty of merchantability had been breached and awarded damages in the amount requested by Simrall including prejudgment interest at 8% per annum starting from the date of the filing of the complaint. Aggrieved by the court's judgment, Hartz filed a motion for a new trial. In that motion, Hartz requested a deletion of the prejudgment interest award. The court denied Hartz's motion for a new trial, but amended the judgment by reversing the award of prejudgment interest. Hartz has appealed and assigns as error whether Simrall, whose experts failed to test its Hartz seed, could carry its burden of proof to show viral infection by evidence of visual symptoms, particularly when other problems could have caused the visual symptoms.
¶ 2. Simrall has cross-appealed, and raised the following issue: whether the court erred in denying its award of prejudgment interest.
¶ 3. Finding no prejudicial error, this Court affirms.

FACTS
¶ 4. Hartz publicized its roundup ready soybean seeds as top quality, disease resistant, high yielding seeds. Simrall purchased two varieties of the roundup ready seeds, 5164 and 6686, in May of 1997. Simrall planted 350 acres of the 5164 variety on June 3-5, 1997 and 450 acres of the 6686 variety between July 8-15, 1997. As they grew and began to produce, Simrall noticed that the pods were shedding on the 5164 seeds some time in July and immediately reported this information to Burney Westmoreland, a salesman for Hartz. Westmoreland notified Hartz and representatives were sent to inspect the crops planted with the 5164 seeds. Hartz representatives informed Simrall of the 5164's propensity for pod shedding and assured him that the pods would regenerate. However, most of the pods did not regenerate.
¶ 5. Simrall called Dr. Alan Blaine, an agronomy expert, who made several trips to visit the crops planted with 5164 seeds in an effort to determine the problem. After the first visit, Dr. Blaine asked Dr. Moore, a plant pathologist, and other experts to inspect the seeds. Dr. Blaine and the other experts noticed that the 5164 seeds experienced excessive hilum bleeding, a brown or black discoloration running from the eye of the seed down onto the coat of the seed, which is indicative of the soybean mosaic virus (SMV). After several visual inspections and consultations with other experts, Dr. Blaine diagnosed the 5164 seeds with SMV.
¶ 6. Prior to harvesting the 6686 seeds in mid-September, Simrall called Dr. Blaine again to inspect the 6686 seeds because they were not maturing. Dr. Blaine noticed similar problems with this variety and diagnosed them with SMV as well. However, during the trial, experts for Hartz testified that excessive hilum bleeding could be indicative of other diseases and that other problems were present in the crops that could have contributed to the reduction in yield for that year.
¶ 7. Simrall testified that between 1992 and 1996, its lowest per acre yield of soybeans was 34.97 bushels in 1996, and its highest per acre yield of soybeans was 46.07 in 1994. In the fall of 1997, Simrall suffered a significant reduction in its yield from the 5164 and 6686 seeds.
¶ 8. The 5164 yielded 7.61 bushels per acre and the 6686 yielded 7.27 bushels per acre. Simrall indicated that its 1997 crop had been pre-sold for $7.16 per bushel. Because of the low yield from the 5164 and 6686 seeds, Simrall testified it was short 28 *1274 bushels per acre, resulting in a loss of $70,168 on the 5164 seeds and $90, 216 on the 6686 seeds.

ISSUE AND ANALYSIS

I.

Whether Simrall, whose experts failed to test its Hartz seed, could carry its burden of proof to show viral infection by evidence of visual symptoms?
¶ 9. The circuit court found that the seeds purchased by Simrall were subject to a viral infection. The court held this to be a breach of the implied warranty of merchantability and awarded damages to Simrall. Hartz suggests that this ruling was erroneous because there was no proof of laboratory testing to confirm the viral infection. Hartz suggests that the court erroneously relied on Simrall's experts' testimony, who conducted only visual inspections on unspecified fields, without the benefit of having actual laboratory tests conducted. Hartz contends that other diseases present symptoms similar to SMV, and visual inspection is not the most reliable or effective method to determine what type of disease a seed has.
¶ 10. The implied warranty of merchantability is found in Miss.Code Ann. § 75-2-314(1) (Rev.2000), which provides in pertinent part:
(1) [A] warranty that the goods shall be merchantable is implied in a contract for their sale if the seller is a merchant with respect to goods of that kind ...
(2) Goods to be merchantable must be at least such as ...
(3) Are fit for the ordinary purpose for which such goods are used.
¶ 11. Simrall had the initial burden of making a prima facie case of breach of implied warranty by presenting credible evidence that the seeds were unmerchantable, i.e., that the seeds were not disease resistant and did not produce high yields; and that the defect(s) existed at the time the seeds left Hartz's control. North River Homes, Inc. v. Bosarge, 594 So.2d 1153, 1160 (Miss.1992); Hargett v. Midas Int'l Corp., 508 So.2d 663, 665 (Miss.1987).
¶ 12. Hartz represented its 5164 and 6686 seeds as disease resistant, high yielding, top quality soybeans. However, Simrall testified that this representation was inconsistent with its experience.
¶ 13. Simrall produced several expert witnesses, including an agronomist and plant pathologist, who having been accepted as expert witnesses, offered the opinion that Simrall's problems were caused by the Soybean Mosaic Virus, a viral infection in soybeans. Plaintiff's experts identified very specific items upon which they opined that these seeds were infected with SMV. Hartz also offered its witnesses, who were qualified and accepted as experts. The court found that they, like Plaintiffs witnesses, had appropriate education, training and/or experience to be accepted as expert witnesses pursuant to Rule 702 of the Mississippi Rules of Evidence.
¶ 14. Defendant's expert witnesses disputed that Simrall's problems were caused by SMV, and further disputed that an opinion offered after a visual inspection was beneficial in determining the source of Simrall's problems. While Defendant's experts did not dispute the presence of the items used by Plaintiff's experts as a basis for their opinions, they did dispute whether these things, without laboratory confirmation, were adequate for the determinations made by Plaintiff's experts.
¶ 15. Having received divergent opinions, the responsibility lay with the trial judge, as trier of fact, to assess the credibility of the witness, and determine *1275 the weight to be given their testimony. McCallum v. Laird, 244 Miss. 273, 275, 142 So.2d 32, 32 (1962). It is not the function of this Court to resolve anew, matters of weight and credibility on appeal. Id. Where the proper standard of law has been applied, it is the function of this Court to determine whether there exists in the record substantial credible evidence which supports the decision. Cotton v. McConnell, 435 So.2d 683, 685 (Miss. 1983) (quoting Culbreath v. Johnson, 427 So.2d 705, 707-08 (Miss.1983)). If such substantial evidence exists within the record, then this Court must affirm. Par Indus., Inc. v. Target Container Co., 708 So.2d 44, 47(¶ 4) (Miss.1998) (quoting Puckett v. Stuckey, 633 So.2d 978, 982 (Miss.1993)). Plaintiff's witnesses provided credible testimony upon which the trial judge could have and did base his decision. This of necessity means that he found more persuasive the testimony of Plaintiff's witnesses. Unless the testimony is so incredible as to be absolutely unworthy of belief, this Court will not re-weigh the evidence. A & F Properties, LLC v. Lake Caroline, Inc., 775 So.2d 1276(¶ 17) (Miss. Ct.App.2000). The mere fact that testimony is disputed does not render it incredible.
¶ 16. There was ample credible evidence from which the trial judge could conclude that Hartz breached its implied warranty of merchantability. Because weight and credibility are issues determined by the trier of fact, we are, therefore, not convinced that the trial judge abused his discretion by allowing Simrall's experts to testify based on a visual inspection of the crops.

Simrall's Cross-Appeal

I.

Whether the court erred in denying prejudgment interest?
¶ 17. Simrall argues that it could not be adequately compensated without the award of prejudgment interest. Simrall suggests that it cannot be made whole or adequately compensated with just the value of the loss of yield of beans. Additionally, Simrall argues that its damages were liquidated and not contested by Hartz because the evidence demonstrated that damages could be ascertained by a formula provided by Simrall. Hartz relies on Miss. Code Ann. § 75-17-7 (Rev.2000) which gives the trial court discretion in awarding prejudgment interest.
¶ 18. Mississippi Code Annotated section 75-17-7 (Rev.2000) provides the interest rate at which prejudgment interest is to be calculated and the date from which it is to be calculated. The statute provides that:
All judgments or decrees founded on any sale or contract shall bear interest at the same rate as the contract evidencing the debt on which the judgment or decree was rendered. All other judgments or decrees shall bear interest at a per annum rate set by the judge hearing the complaint from a date determined by such judge to be fair but in no event prior to the filing of the complaint.
¶ 19. This Court recognizes that authority to grant prejudgment interest rests within the discretion of the trial judge. Warwick v. Matheney, 603 So.2d 330, 342 (Miss.1992). According to Hans Const., Inc. v. Drummond, 653 So.2d 253 (Miss.1995), one of two requirements is necessary for the award to be appropriate. The key to awarding prejudgment interest is "that there be a liquidated amount due or a frivolous or bad faith denial of a claim." Id. at 264.
¶ 20. Initially, the trial judge awarded Simrall damages plus prejudgment interest pursuant to the statute beginning from the date of the filing of the complaint. Aggrieved by this award, Hartz argues that the judgment should be *1276 amended, alleging that the court erred by awarding prejudgment interest pursuant to Hans Const., Inc. v. Drummond, 653 So.2d 253 (Miss.1995), which held that prejudgment interest is applicable only in "cases where the amount due is liquidated when the claim is originally made or where the denial of a claim is frivolous or in bad faith." Id. at 264. The court amended its original award of prejudgment interest beginning from the date of the judgment. Notwithstanding its first amended judgment, the court again amended its judgment by terminating its award of prejudgment interest pursuant to Hans. The trial court held that despite Simrall's formula for calculating damages, the damages were not liquidated nor were there allegations of bad faith in this case. An award of prejudgment interest is reviewed for abuse of discretion. Aetna Cas. & Sur. Co. v. Doleac Elec. Co., 471 So.2d 325, 331 (Miss. 1985). As there was no liquidated amount or bad faith present in the case at bar, the judge did not abuse his discretion in terminating the award of prejudgment interest. His decision to do so is therefore affirmed.
¶ 21. THE JUDGMENT OF THE WARREN COUNTY CIRCUIT COURT IS AFFIRMED ON DIRECT AND CROSS APPEALS. ALL COSTS OF THIS APPEAL ARE TAXED TO THE APPELLANT.
BRIDGES, THOMAS, LEE, IRVING, MYERS, CHANDLER and BRANTLEY, JJ., CONCUR. McMILLIN, C.J., CONCURS AS TO DIRECT APPEAL. SOUTHWICK, P.J., CONCURS WITH SEPARATE WRITTEN JOINED BY McMILLIN, C.J.
SOUTHWICK, P.J., concurring:
¶ 22. This opinion is presented solely because of my perception that we should clarify the issue of prejudgment interest. The majority in my view is correct for this case but states the law in such a way that can be read to apply to all prejudgment interest. For that reason this concurrence is offered.
¶ 23. The majority identifies a statute that it says "provides the interest rate at which prejudgment interest is to be calculated and the date from which it is calculated." Miss.Code Ann. § 75-17-7 (Rev. 2000). As the statute itself states, it applies to interests on judgments, i.e., postjudgment interest, permits the trial court to set the interest rate, and prohibits interest from being applied for any period prior to the date of the filing of the complaint. Section 75-17-7 is usable only for post-suit interest though some of the interest may be prejudgment.
¶ 24. Much of the case law involving prejudgment interest has been decided under an entirely different statute. Miss. Code Ann. § 75-17-1(1) (Rev.2000). It provides that "the legal rate of interest on all notes, accounts and contracts shall be eight percent (8%) per annum...." Id.; Fred's Stores of Mississippi, Inc. v. M & H Drugs, Inc., 725 So.2d 902, 921 (Miss. 1998). This statute is used apparently because a breach that causes easily calculable contract damages is treated as an obligation under the contract. Once judgment is entered for a specific amount, though, this statute is no longer relevant because it is interest on the judgment that is then accumulating, not interest on the contract.
¶ 25. Another recent supreme court explanation of prejudgment interest referred both to Section 75-17-1(1) and to Section 75-17-7. Sentinel Industrial Contracting Corp. v. Kimmins Industrial Service Corp., 743 So.2d 954, 971 (Miss.1999). Referring to both may be the clearest explanation.
¶ 26. Section 75-17-1(1) is authority for eight percent interest that begins no earlier than the date of damages and ends at judgment. Section 75-17-7 is authority *1277 for interest, set at a reasonable rate by the trial court, that begins no earlier than the filing of suit and continues post-judgment until paid. Perhaps for interest that a trial court decides to impose for some period during the pendency of the suit, either statute could be utilized.
McMILLIN, C.J., JOINS THIS SEPARATE OPINION.