# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2022-CA-00753-COA

| | |
|---|---|
| BARBARA CRAWFORD AND GERTRUDE WHITE FOR AND ON BEHALF OF ALL WRONGFUL DEATH BENEFICIARIES OF LUVENIA HODGE | APPELLANTS |

v.

| | |
|---|---|
| EAST MISSISSIPPI STATE HOSPITAL INC. D/B/A THE REGINALD P. WHITE AND JAMES T. CHAMPION NURSING FACILITIES | APPELLEE |

DATE OF JUDGMENT: 03/29/2022
TRIAL JUDGE: HON. ROBERT THOMAS BAILEY
COURT FROM WHICH APPEALED: LAUDERDALE COUNTY CIRCUIT COURT
ATTORNEYS FOR APPELLANTS: JOHN F. HAWKINS
EDWARD BLACKMON
BRADFORD JEROME BLACKMON
ATTORNEY FOR APPELLEE: STEVEN D. SLADE
NATURE OF THE CASE: CIVIL - WRONGFUL DEATH
DISPOSITION: AFFIRMED - 04/30/2024
MOTION FOR REHEARING FILED:

**EN BANC.**

**LAWRENCE, J., FOR THE COURT:**

¶1. Luvenia Hodge was a resident at the Reginald P. White and James T. Champion Nursing Facility in Meridian, Mississippi. Following an injury she sustained due to the stipulated negligence of hospital employees, Hodge underwent surgery but died days later. Hodge's daughter Barbara Crawford, individually and on behalf of her mother's estate and beneficiaries, filed a complaint under the wrongful death statute. Following a revision to the wrongful death statute, Crawford amended the complaint by removing the estate. Following

a bench trial, the circuit judge found that the hospital's negligence was not the proximate cause of Hodge's death; therefore, Crawford's wrongful death claim failed. Aggrieved, Crawford appeals, arguing that the judge's proximate-cause finding was erroneous. Alternatively, Crawford contends she and the heirs were nevertheless permitted to recover for Hodge's "personal injuries" under the wrongful death statute. Finding no error, we affirm.

## FACTUAL BACKGROUND

¶2.     Luvenia Hodge was an eighty-seven-year-old resident at the Reginald P. White and James T. Champion Nursing Facility (the nursing home) in Meridian, Mississippi. She was admitted as a resident after she developed dementia in 2013 and was documented as having "hypertension, symptomatic supraventricular tachycardia . . . [and] a history of seizures[.]" The nursing home was owned and operated by East Mississippi State Hospital (the hospital). In 2016, Hodge's health was "in decline," and she was taken to the hospital for treatment for multiple ailments including "urinary tract infections, bed sores, and staph infections." In addition, she was "having difficulty eating and could no longer feed herself."

¶3.     On April 27, 2016, Hodge had an appointment offsite and was scheduled to be transported by a van owned and operated by the hospital. She was in a wheelchair at the time of the transport and was loaded into the van by two employees of the nursing home. The employees failed to properly secure the wheelchair in the van. While the van was in motion,

2

Hodge was "thrown" from her wheelchair and suffered a broken femur.[1]  The injury required surgery the following day, which consisted of placing a steel rod into Hodge's leg.  On May 1, 2016, she was discharged from the hospital, and on May 2, 2016, she was placed in hospice care.  Following the accident, Hodge "became uncommunicative, lethargic, and gave no indication that she recognized her children."  On May 9, 2016—twelve days after the accident—Hodge died.

¶4.    On October 13, 2016, Hodge's daughter Barbara Crawford, individually, as administratrix for Hodge's estate, and on behalf of the wrongful death beneficiaries, filed a complaint in the Lauderdale County Circuit Court.  The complaint was "filed pursuant to the Wrongful Death Statu[t]e of the State of Mississippi" and stated that "all claims and damages may be recoverable in this case under said Statu[t]e."  The damages sought allegedly resulted from funeral expenses, emotional distress, pain and suffering, loss of enjoyment of life, and medical bills.  On December 16, 2016, the hospital filed its answer to the complaint.

¶5.    On August 16, 2018, Crawford filed an unopposed motion for leave to file an amended complaint following the Mississippi Legislature's revision of the wrongful death statute, Mississippi Code Annotated section 11-7-13 (Rev. 2018).  2018 Miss. Laws ch. 340, § 1 (H.B. 1091) (effective July 1, 2018).  The following language had been added to the statute, including the bolded words:

---

[1]  In addition to the broken femur, Hodge was also "bleeding from an injury to her nose, and had numerous bruises and abrasions to both of her arms."

Any widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child, or interested party **may bring an action pursuant to the provisions of this section outside an estate**, regardless of whether there are real or personal assets of an estate.

*Id.* (emphasis added).

¶6.     On November 2, 2018, Crawford filed the amended complaint, which removed the estate as a party from the action and added Gertrude White, another one of Hodge's daughters, as a party on behalf of the wrongful death beneficiaries.  On November 28, 2018, the hospital filed an answer in response.[2]  Crawford filed a motion on March 7, 2019, requesting an establishment of multiple scheduling dates, most notably a date for trial.  *See* M.R.C.P. 16.  On August 20, 2019, the hospital filed a motion to require a determination of Hodge's wrongful death beneficiaries, stating that the issue needed to be "resolved before commencement of trial" in reference to  Mississippi Code Annotated section 11-7-13.  On October 2, 2019, the hospital filed a motion to "strike and/or exclude" the expert Crawford retained.

¶7.     On October 3, 2019, the hospital filed a motion for summary judgment alleging that no facts presented indicated the hospital's employees acted negligently and that Crawford failed to provide a formula to calculate damages.  The hospital also cited Crawford's "failure" to have Hodge's heirs determined by a chancery court and stated that if the circuit

---

[2]  The hospital also filed a motion to dismiss Crawford's original complaint.  The circuit court denied the motion on May 21, 2019, finding that such dismissal was "not necessary at this juncture in the litigation" and could be brought up "at the appropriate time through a motion in limine."

court were to find that only personal damages she suffered prior to her death were appropriate, the only party who could recover was her estate (now removed from the action). On March 11, 2021, the circuit court denied the hospital's motion for summary judgment.[3] That same day, the court denied the hospital's motion to exclude Crawford's expert.

¶8. On March 31, 2021, the parties submitted a proposed pre-trial order stating that "negligence and [the] proximate cause of Hodge's injuries – broken femur, bruises and broken nose, surgery and related costs – are established in this case and will be stipulated for trial purposes." The only matter to be considered at trial was "whether the fall, broken femur, surgery and sequelae proximately caused or contributed to Ms. Hodge's death." The case proceeded to trial without a jury, taking place on March 31, 2021, and April 1, 2021.[4]

¶9. At trial, the judge heard testimony from several witnesses, beginning with White, who testified about Hodge's declining health before the accident and her "despondent" nature following the accident. White said she was never told that her mother had suffered a massive stroke. White also stated that she had a pending petition in chancery court for a determination of Hodge's heirs. Crawford then testified and recounted the events leading up to her mother's death.

---

[3] A hearing had been held on October 28, 2019, to address the motion for summary judgment and other issues. The circuit court judge had taken the matter under consideration.

[4] Cases brought under the Mississippi Tort Claims Act (MTCA) are "tried without a jury." *Maxwell v. Panola County*, No. 2021-CA-01001-COA, 2023 WL 2132171, at *3 (Miss. Ct. App. Feb. 21, 2023) (quoting *Miss. Dep't of Pub. Safety v. Durn*, 861 So. 2d 990, 994 (¶7) (Miss. 2003)), *cert. denied*, 369 So. 3d 996 (¶30) (Miss. 2023).

¶10. Crawford also called her expert witness, Dr. Trevor Pickering, an orthopedic surgeon employed at Mississippi Sports Medicine in Jackson, Mississippi. He had testified by deposition and at previous motion hearings, so the trial testimony was supplemental. The deposition and previous hearing testimonies were transcribed and introduced together as an exhibit at trial. Essentially, Dr. Pickering testified that Hodge had suffered from a stroke caused by a fatty embolism, which was a result of the broken femur or resulting surgery. The ordeal, "the fracture[,] . . . the sequelae of the fracture, . . . the surgery, [the] hospitalization, [and] the anesthesia precipitated her death because [it] worsened all of her preexisting conditions." Following Dr. Pickering's testimony, Crawford rested.

¶11. The hospital called Judd Nance, the administrator of the nursing home, as its first witness. He testified about the order and procedure the hospital and nursing home maintained, as well as the investigation into the employees who had negligently played a role in Hodge's injuries.

¶12. The hospital also called Dr. Stephen A. Tramill, a physician who had served as the medical director for the nursing home. Dr. Tramill testified that when Hodge was admitted to the facility in 2013, she was unable to walk independently and had "dementia, hypertension, symptomatic supraventricular tachycardia," as well as a "history of seizures." Over the course of a few years, Hodge underwent a "general decline . . . in her overall health mainly due to aging." Near the time of her death, the hospital was set to evaluate her for a feeding tube.

¶13. To counter Dr. Pickering for Crawford, the hospital called its own expert witness, Dr. Lon F. Alexander, a neurosurgeon. Like Dr. Pickering, Dr. Alexander also concluded Hodge's cause of death was a massive stroke; however, he disagreed that the stroke was caused by a fatty embolism. Instead, he opined that Hodge's documented afflictions led "up to a stroke . . . that proved to be fatal." Dr. Alexander also stated that the scenario Dr. Pickering posed was "rare" and that while Hodge's injury and surgery may have had a "small" role in her death, it was "the decline in function . . . that was the proximate cause and the causal link to her demise."

¶14. In addition to the testimony, the circuit court was also presented with exhibits by both sides, such as an affidavit from Dr. Gerald Lee offered by the hospital. Dr. Lee, a professor of economics, concluded in his affidavit "that there would arise no economic loss as a result of [Hodge's] death that would arise from a lost earnings stream." Crawford offered a deposition of Dr. James Reed Green.[5] This deposition of Dr. Green, the doctor who performed surgery on Hodge's broken femur, indicated that such an injury in geriatric patients was not considered life-threatening. Dr. Green "didn't think she had any life-threatening issues; otherwise, [they] wouldn't have sent her back to the nursing home." He further concluded that he "wouldn't say femur fracture was the cause of death or fixing a femur fracture was the cause of death."

¶15. On March 29, 2022, the circuit court entered its final judgment finding that Crawford

---

[5] Dr. Green's testimony was taken via deposition on August 30, 2017.

"failed to prove that the [hospital's] negligence was the proximate cause of Hodge's death." Consequently, the court held that Crawford could not recover for Hodge's personal injuries because "if the wrongful death claim fails, then the heirs cannot recover for the decedent's personal injuries." *See In re Est. of England*, 846 So. 2d 1060, 1069 (¶28) (Miss. Ct. App. 2003) (citing *Wilks v. Am. Tobacco Co.*, 680 So. 2d 839, 840 (Miss. 1996)).

¶16. Crawford filed a motion to alter or amend the judgment on April 8, 2022. On April 11, 2022, Hodge's estate filed a motion for reinstatement and joinder as to the previous motion to alter or amend. On April 18, 2022, the hospital responded to the motion to alter or amend the judgment, stating that it was clearly Crawford's attempt to "un-do what they went to great lengths to achieve[,] . . . which was to remove the Estate of Hodge as a party-plaintiff in this action." On May 18, 2022, the hospital filed a motion objecting to the joinder request. Crawford filed a motion requesting an order "directing" the parties to mediate or for a settlement conference on May 25, 2022; the hospital objected to that motion on June 1, 2022. Crawford filed a motion for additional time to reply to the hospital's response regarding the settlement conference.

¶17. On June 15, 2022, the court held a hearing on the motions. Both parties sought to have a settlement discussion before proceeding with the hearing, but the parties ultimately did not reach an agreement. The hearing proceeded, and counsel for Crawford asked that they be permitted to "revive the Estate as the proper party" to recover personal injury

8

damages.[6]  Crawford also brought attention to the judgment's discussion of proximate causation, particularly that it appeared the judge was "concerned that [Crawford's] expert had given testimony as to the mere possibility rather than to a reasonable degree of probability or certainty in its expert opinion."

¶18.  The hospital responded that Crawford's motion and argument referenced no new evidence, a change in the law, or manifest injustice and should be denied.  Additionally, the hospital argued that in wrongful death cases such as this one, "the death itself must be wrongful in order to sustain wrongful death damages."  On July 6, 2022, the circuit court entered an order denying Crawford's motion to amend or alter the judgment.  On July 19, 2022, Crawford filed a notice of appeal.

## DISCUSSION

¶19.  Crawford's appeal primarily argues that (1) the trial court's finding as to proximate cause was made in error and (2) that the trial court erred by denying Crawford's claims for "personal injury" damages during Hodge's lifetime.

### I.  Proximate Cause

¶20.  We first address the issue of proximate cause, beginning with our standard of review.  "A circuit court judge sitting as the trier of fact is given the same deference with regard to his fact finding as a chancellor, and his findings are safe on appeal when they are supported

---

[6]  In so doing, if the circuit judge were to maintain the finding that the injury was not the proximate cause of Hodge's death, the estate would be "able to collect damages awarded by this [c]ourt."

by substantial, credible, and reliable evidence." *Maxwell*, 2023 WL 2132171, at *3 (¶30) (quoting *Durn*, 861 So. 2d at 994 (¶7)). "Findings of fact by a trial judge after a bench trial are subject only to a limited scope of review if the trial judge applied the appropriate legal standard." *Univ. Med. Ctr. v. Martin*, 994 So. 2d 740, 746 (¶24) (Miss. 2008) (citing *Meeks v. State*, 781 So. 2d 109, 113 (¶9) (Miss. 2001)). Consequently, a trial court's findings must be "afforded deferential treatment." *Id.* at (¶24) (quoting *Univ. of Miss. Med. Ctr. v. Pounders*, 970 So. 2d 141, 147 (¶23) (Miss. 2007)).

¶21. Causation, as an element of a wrongful death claim, is an essential finding for Crawford to recover. "It is essential . . . that the negligence complained of shall be the proximate cause, or at least a directly contributing cause, of the death which is the subject of the suit." *Berryhill v. Nichols*, 171 Miss. 769, 158 So. 470, 471 (1935). "The negligence, and not something else, must have been the cause which produced or directly contributed to the death." *Id*. (citing *Hamel v. Southern Ry. Co.*, 113 Miss. 344, 358, 74 So. 276 (1917)). Proximate cause must be proved "as a reasonable probability. To prove no more than that it was a possibility is not a sufficient foundation for the support of a verdict or judgment." *Id.*

¶22. Before us today is a classic battle of the experts. *See Clark v. State*, 315 So. 3d 987, 997 (¶23) (Miss. 2021) (citing *Hill v. Mills*, 26 So. 3d 322, 330 (¶28) (Miss. 2010)). "While this Court might consider opposing testimonies in an evaluation of the weight . . . of the evidence, we have no place comparing the two in determining the admissibility of one of

their opinions. That one party's expert witness contradicts the testimony of the other party's expert witness should come as no surprise." *Id.* Both Crawford and the hospital presented their own expert witnesses who theorized about the cause of Hodge's death. Dr. Pickering believed Hodge's death was caused by an embolic stroke resulting from a fatty embolism. Dr. Alexander similarly believed Hodge's death was caused by a massive stroke but disagreed that a fatty embolism was to blame. The circuit judge found Dr. Alexander's theory more persuasive and relied upon it in finding that the hospital's actions were not the proximate cause of Hodge's death.[7] The Mississippi Supreme Court has held that "questions of weight and credibility of expert testimony are determined by the trier of fact." *Martin*, 994 So. 2d at 747 (¶25) (quoting *Palmer v. Biloxi Reg'l Med. Ctr. Inc.*, 564 So. 2d 1346, 1355 (Miss. 1990)). So here, "[i]n a bench trial, the trial court ultimately decides who is deemed champion of the battle of the experts." *Pittman v. Mem'l Hosp. at Gulfport*, 300 So. 3d 1053, 1060 (¶28) (Miss. Ct. App. 2020). Indeed, "trial and appellate courts have separate institutional roles[, and] . . . our role is that of an appellate court and not as triers of fact ab initio." *Id.* (quoting *Tricon Metals & Servs. Inc. v. Topp*, 516 So. 2d 236, 239 (Miss. 1987)).

¶23. The circuit judge's decision was based on substantial evidence. "A trial judge has not

---

[7] Crawford maintains Dr. Alexander was not qualified to be an expert witness. "Our precedent is firmly grounded in the rule that findings that turn solely on conflicts in fact and expert opinion are to be left undisturbed by this Court and will not constitute reversible error." *Pittman*, 300 So. 3d at 1060 (¶26) (citing *Pounders*, 970 So. 2d at 147 (¶26)). "[T]he mere fact that testimony is disputed does not render it incredible." *Jacob Hartz Seed Co. v. Simrall & Simrall*, 807 So. 2d 1271, 1275 (¶15) (Miss. Ct. App. 2001).

erred simply because he or she did not acknowledge or rely on a particular expert's testimony." *Martin*, 994 So. 2d at 747 (¶25) (citing *Pounders*, 970 So. 2d at 147); *see also Univ. of Miss. Med. Ctr. v. Johnson*, 977 So. 2d 1145, 1152 (¶21) (Miss. Ct. App. 2007) (stating that "a trial court commits no error [by] finding one expert more persuasive than another, as the trial court, sitting as the trier of fact, is the sole judge of the credibility of all witnesses, including experts" (citing *Jacob Hartz*, 807 So. 2d at 1274-75 (¶15))). A review of the entire record indicates that the circuit judge was given numerous pieces of evidence, including testimony from both experts, testimony from Hodge's daughters, testimony from the director and manager of the nursing home, and medical records. Notably, the judge also reviewed the transcript of a deposition with Dr. Green, Hodge's surgeon, where he stated that he did not think the injuries she suffered were life-threatening.

¶24. Crawford also argues that the circuit judge should have applied the "eggshell plaintiff" doctrine in determining proximate cause. However, the "eggshell plaintiff theory does not obviate the necessity to show foreseeability. . . . It simply provides that plaintiffs who are far more susceptible to a particular harm than the average person may nonetheless recover their full damages without reduction." *City of Jackson v. Est. of Stewart ex rel. Womack*, 908 So. 2d 703, 715 (¶62) (Miss. 2005). The eggshell doctrine, long-taught in law schools, states that "you take the plaintiff as you find him or her." *Id.* Should the circuit judge have found proximate causation, an application of the doctrine would have been necessary, but "we do not reach the eggshell plaintiff analysis without first satisfying the

question of foreseeability." *Id.* There was sufficient evidence for the circuit judge to find the hospital's negligence did not cause Hodge's death. The circuit judge, sitting as the trier of fact, made the factual determination about causation after the parties presented competing evidence on that factual issue. The "proximate cause" here is a factual issue. *See Smith v. Minier*, 380 So. 3d 889, 893 (¶¶13, 15) (Miss. 2024) ("[W]hether the breach of duty is the cause of the plaintiff's injuries . . . is a fact question for the jury." (footnote omitted)); *accord Miller v. Vicksburg Masonic Temple*, 288 So. 3d 372, 376 (¶18) (Miss. Ct. App. 2019) (stating that "questions of proximate cause and negligence are for the [trier of fact]"); *see also* 31A Am. Jur. 2d *Explosions and Explosives* § 40 (updated Feb. 2024) ("Ordinarily, proximate cause is a question of fact[.]").[8] Under our standard of review, we find no error in the trial court's factual determination of the proximate cause issue.

## II.     Wrongful Death Statute

¶25.     It is important to note for purposes of this section that the estate **was** a party to the complaint when it was initially filed on October 14, 2016—specifically, the complaint was brought by "Barbara Crawford individually and in her capacity as administratrix for and on behalf of the Estate and all wrongful death beneficiaries of Luvenia Hodge." Crawford then filed a motion to amend the complaint **specifically** to dismiss the estate. The court granted that motion on November 2, 2018. The only parties remaining after this amendment were

---

[8] "Mississippi Tort Claims Act cases are tried without a jury." *Donaldson v. Covington County*, 846 So. 2d 219, 227 (¶37) (Miss. 2003) (citing Miss. Code Ann. § 11-46-13(1)). It is the judge who sits as the trier of fact. *See Martin*, 994 So. 2d at 747 (¶25).

"Barbara Crawford and Gertrude White; for and on behalf of all wrongful death beneficiaries of Luvenia Hodge."

¶26. We thus turn to the wrongful death statute to determine what damages, if any, Crawford may still recover despite the fact that the court denied the wrongful death claim. That statute provides:

> **Whenever the death of any person** or of any unborn quick child **shall be caused by any real, wrongful or negligent act or omission**, or by such unsafe machinery, way or appliances as would, if death had not ensued, have entitled the party injured or damaged thereby to maintain an action and recover damages in respect thereof, or whenever the death of any person or of any unborn quick child shall be caused by the breach of any warranty, express or implied, of the purity or fitness of any foods, drugs, medicines, beverages, tobacco or any and all other articles or commodities intended for human consumption, as would, had the death not ensued, have entitled the person injured or made ill or damaged thereby, to maintain an action and recover damages in respect thereof, and such deceased person shall have left a widow or children or both, or husband or father or mother, or sister, or brother, the person or corporation, or both that would have been liable if death had not ensued, and the representatives of such person shall be liable for damages, notwithstanding the death, and the fact that death was instantaneous shall in no case affect the right of recovery. The action for such damages may be brought in the name of the personal representative of the deceased person or unborn quick child for the benefit of all persons entitled under the law to recover, or by widow for the death of her husband, or by the husband for the death of the wife, or by the parent for the death of a child or unborn quick child, or in the name of a child, or in the name of a child for the death of a parent, or by a brother for the death of a sister, or by a sister for the death of a brother, or by a sister for the death of a sister, or a brother for the death of a brother, or all parties interested may join in the suit, and **there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned**, but the determination of such suit shall not bar another action unless it be decided on its merits. Except as otherwise provided in Section 11-1-69, in such action the party or parties suing **shall recover such damages allowable by law** as the jury may determine to be just, taking into consideration all the damages of every kind to the decedent and all damages

14

of every kind to any and all parties interested in the suit.

Miss. Code Ann. § 11-7-13 (Rev. 2018) (emphasis added).

¶27.    This state's supreme court was presented with a similar case in 1996, *Wilks v. Am. Tobacco Co.*, 680 So. 2d 839, 840 (Miss. 1996).  In that case, the heirs of a longtime smoker who died of lung cancer argued they were entitled to lifetime damages sustained by the decedent under the wrongful death statute.  *Id*.  The court held that "[a]lthough the wrongful death statute provides for recovery of all the damages of every kind, which would certainly include lifetime damages, the entire claim under this statute must fail where the heirs failed to prove by a preponderance of the evidence that [decedent]'s death was caused by [Defendant]."  *Id*.  Crucially, lifetime damages such as those Wilks requested "had to be brought in a suit by the personal representative" of the deceased's estate.  *Id*. at 843 (citing *Berryhill*, 158 So. at 471); *Munn v. Southern Health Plan Inc.*, 719 F.Supp. 525, 530 (N.D. Miss. 1989) ("concluding cause of action for damages must be brought under survival statute where defendant found not liable for decedent's death").  The supreme court ultimately held in favor of the tobacco company because it "cannot be blamed for the heirs' failure to alternatively pursue a cause of action for personal injury under Mississippi's survival statute."  *Id.*

¶28.    This Court followed this precedent in *In re Estate of England*, 846 So. 2d 1060 (Miss. Ct. App. 2003).  Betty England died of cardio-pulmonary arrest.  *Id.* at 1063 (¶6).  Her heirs pursued a wrongful death action against the manufacturers of Rezulin, a drug England used

15

to treat her diabetes. *Id.* at 1062-63 (¶4). This Court stated that "wrongful death has been recognized as a tort separate and distinct from other personal injury actions." *Id*. at 1066 (¶17) (citing *Gentry v. Wallace*, 606 So. 2d 1117, 1119 (Miss. 1992), *overruled on other grounds by Jenkins v. Pensacola Health Tr. Inc.*, 933 So. 2d 923 (Miss. 2006)). This Court held that "if Rezulin proximately caused . . . England's death, any damages for [her] personal injuries from Rezulin must be recovered in an action for wrongful death, and could not be recovered by the estate under the survival statute." *Id*. at 1068 (¶25). On the other hand, should Rezulin not be found as the cause of England's death, "there could be no recovery for the heirs under the wrongful death statute." *Id*. at (¶26). "In that situation, any recovery for Betty's personal injuries from Rezulin belongs to the estate under the survival statute." *Id.* Therefore, in cases such as *England*, "the proper resolution . . . is to allow the estate administrator to assert both a wrongful death action and a survival action against" a defendant. *Id*. at 1069 (¶29).

¶29. Recovery under the wrongful death statute requires a finding that the defendant's actions caused the death of a decedent. In order for parties such as Crawford to recover personal injury damages on behalf of the decedent, the complaint must plead the survival statute. *See* Miss. Code Ann. § 91-7-233 (Rev. 2018). However, also key to recovery is having a party in the complaint to recover such damages. If this Court were to remand this case back for a determination of survival statute damages, who would be awarded those

16

damages?  Crawford removed the estate as a party before trial.[9]

¶30.　Here, Crawford knowingly sought to amend the initial complaint to remove the estate in its entirety from the lawsuit.  This deliberate decision had consequences.  Just as in *Wilks*, the plaintiffs were not entitled to recover because lifetime damages must be brought under the survival statute by the estate's personal representative.  *Wilks*, 680 So. 2d at 843.  Further, *England* held that when a wrongful death claim fails then recovery for any of the plaintiff's "personal injuries . . . **belongs to the estate** under the survival statute."  *England*, 846 So. 2d at 1068 (¶26) (emphasis added).  The estate is not a party to the action; thus, Crawford cannot recover for survival statute damages in a wrongful death lawsuit where the death was found not to be proximately caused by the alleged tortfeasor.

## CONCLUSION

¶31.　Under our limited standard of review, we find no error in the circuit judge's factual

---

[9] The separate opinion makes an argument concerning the personal damages Hodge suffered when she broke her femur.  The problem is, who would the court award those damages to in this unique legal circumstance—the two daughters in the lawsuit, the estate (which is not a party to the lawsuit), or remaining family members who also are not a party to the lawsuit.  The estate was removed and was no longer a viable party.  The parties attempted to amend the lawsuit again to reinstate the estate as a party **after** the trial judge ruled against Crawford on the wrongful death issue.  The trial court denied that requested amendment, stating that Crawford's "removal of the Estate was intentional and [Crawford] went to great lengths to achieve that removal."

The question in this case is not whether wrongful death damages and Hodge's personal damages can be pursued in the one wrongful death lawsuit.  The statute resolves that issue.  The problem, and the question this case presents, is whether Crawford can still recover Hodge's survival statute damages in the wrongful death lawsuit after an adverse legal adjudication of the wrongful death issue when the estate or the estate representative was not a listed party.

determination of lack of proof of proximate cause.  Therefore, because the hospital's actions did not cause the death of Hodge, Crawford cannot recover under the wrongful death statute. We additionally affirm the finding that there was no party to recover Hodge's lifetime damages because the estate was not a party to the action.

¶32.  **AFFIRMED.**

**BARNES, C.J., CARLTON AND WILSON, P.JJ., GREENLEE AND EMFINGER, JJ., CONCUR.  McCARTY, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY WESTBROOKS, J. McDONALD AND SMITH, JJ., NOT PARTICIPATING.**

**McCARTY, J., CONCURRING IN PART AND DISSENTING IN PART:**

¶33.  It is well established that "Mississippi's wrongful-death statute allows only one suit." *TRK, LLC v. Myles*, 214 So. 3d 191, 195 (¶13) (Miss. 2017).  And so "all parties interested may join in the suit," but "there shall be but one (1) suit for the same death which shall ensue for the benefit of all parties concerned . . . ."  Miss. Code Ann. § 11-7-13 (Rev. 2019).  And it's clear from the express text of our wrongful death law that an estate is not needed to institute a suit for that tort:

> In an action brought pursuant to the provisions of this section by the widow, husband, child, father, mother, sister or brother of the deceased or unborn quick child, or by all interested parties, such party or parties may recover as damages property damages and funeral, medical or other related expenses incurred by or for the deceased as a result of such wrongful or negligent act or omission or breach of warranty, *whether an estate has been opened or not*.

*Id.* (emphasis added).  The next line also makes clear that any of the above individuals, as well as an "interested party[,] may bring an action pursuant to the provisions of this section

18

*outside an estate*, regardless of whether there are real or personal assets of an estate." *Id.* (emphasis added).

¶34.    Since there is only one lawsuit allowed, we are faced with a novel situation in this appeal—where one of the original parties (the estate) was removed from the sole action.  In the view of our Court some two decades ago, we saw the precedent as "mak[ing] clear that the proper resolution of *this case* is to allow the estate administrator to assert both a wrongful death action and a survival action . . . ." *In re Est. of England*, 846 So. 2d 1060, 1069 (¶29) (Miss. Ct. App. 2003) (emphasis added).  Perhaps this is the *optimal* route for a plaintiff to travel, but I am unconvinced it is the *only* one.

¶35.    So where the majority gets stuck is by construing this relatively benign guidance as the exclusive avenue one must take.  In the case at hand, Ms. Hodge's family made a tactical decision to remove the estate during the course of litigation.  Regardless of the propriety of this decision, the express text of the wrongful death statute makes clear that a family member or "interested party" can file the "one suit" irrespective of an estate or whether the estate has any assets.  Miss. Code Ann. § 11-7-13.

¶36.    Further, as Ms. Hodge's family points out in their brief, "Ms. Barbara Crawford, one of the two Plaintiffs, has at all times been the Administratrix of the Estate of Luvenia Hodge," and the Estate remains open—so if truly indispensable to the action, it could have been re-joined to the case as a real party in interest.  This conforms to our Rules of Civil Procedure, which state, "An executor, administrator, guardian, bailee, trustee, a party with

19

whom or in whose name a contract has been made for the benefit of another, or a party authorized by statute may sue in his representative capacity *without joining with him the party for whose benefit the action is brought*." MRCP 17(a) (emphasis added). If there were claims not being brought by the real party in interest, Ms. Hodge's family also should have been allowed "a reasonable time . . . after objection" to bring the estate back in. MRCP 17(a). The defendant had raised just such an objection to the removal of the estate or, perhaps, objected to the possibility that it might return at some later date. Indeed, through counsel, the defendant even argued with great foresight at the time that if the estate were removed, the defendant wanted a clear ruling to prohibit it from returning as a party so as to "prevent any . . . collateral move later to bring the Estate back in to the action and thus bring in the category of [survival] damages." Yet the trial court declined to make such a ruling. After the trial court foreclosed the availability of survival damages, the family sought to rejoin the estate, but that relief was denied.

¶37. By interpreting the precedent and statutes to foreclose survival damages, and by refusing to allow the substitution of an existing estate into this action, we have allowed the Rules of Civil Procedure to act as a trap. That should not be the function of the court system and is indeed the opposite of the very intention stated in the Rules of Civil Procedure. Those "rules shall be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action." MRCP 1. Furthermore, our Rules of Civil Procedure are adamant that "[a]ll pleadings shall be so construed as to do

20

substantial justice." MRCP 8(f).

¶38.   By affirming the trial court's finding that there was no party to recover Ms. Hodge's survival damages, the majority does the opposite of what our Rules mandate—essentially placing form over substance.  If the decision to remove the estate indeed forecloses those damages, we should take the more "just" path under our Rules and reverse and remand to allow Ms. Hodge's family to "revive the Estate as the proper party" to recover personal injury damages.  Because we should construe our Rules "to do substantial justice," and not craft traps for unwary litigants, I must respectfully concur in part and dissent in part.

**WESTBROOKS, J., JOINS THIS OPINION.**